CELLCO COMMUNICATIONS v. CELLCO v. CELLCO . Good morning. We have two disputes with the claim interpretation rendered by the District Court. Let's start with the easier one. It's the identity of the called station. Our position can be fully supported by sections of the appellee's brief. So if you could pull that. I'd like to go to page 19. And you will see there are two excerpts. The first is from the 740 patent. The second is from the 670 patent. The first excerpt is what the District Court expressly relied on in the claim interpretation that the identity of the called station was the called telephone number. And the court specifically relied at the urging of the defendants on the last sentence of that excerpt. And that sentence reads, the called station is identified by the telephone number entered by the calling party at the first telephone 12. Now there's some similarity between that language and the claim language, but I suggest to you that if you look to the previous sentence, the identical language is used. That sentence reads, the switch 18 transmits the call initiated by the calling party over the telephone network 19 toward an identified called station, called station being the operative term, at the second telephone 20. So our position all along has been that the called station is the equipment, the telephone, and not the telephone number. I think that's even more clear in the next excerpt from the 670 patent. Again, the defendants and the District Court relied on the last sentence, which talks about the station being identified by the telephone number. But if you look at the previous sentence, which starts at the bottom of page 19, it reads, the switch 18 transmits the call initiated by the calling party over the communication network 19 toward an identified network address or called station, which in the present embodiment comprises a second telephone 20, but could comprise any other type of communication device. So we would submit that the patent itself very clearly identifies the called station with a piece of equipment, identified actually by number, as opposed to just the telephone number itself. I may not be following you. I understand that your argument is the called station is the telephone that is receiving the call, but the identity of that called station, it seems to me by both of these passages, is the telephone number at that location. So the called station of course is a phone, but that phone has an identity, and how is that phone identified by its telephone number? And that's what both of these specifications expressly say. Well, your honor, I beg to differ. Our position would be that a called station could be identified in a number of ways, and it certainly could be identified by its, one of the ways is its number. But that is not the identity of the called station. The identity, and the called station is a physical attribute. The called station is the phone 20. So that's just a reference to the figure in the patent, right? Correct. So I mean, it's not as if there's a number, like a social security number that the called ... No, but that's an element number so that you can refer to the drawings. Right, but that, well, okay, go ahead. Right, so you wouldn't give a telephone number an element number, because it's not something quantifiable. Well, I'm struggling with the same question that Judge Moore has. I'm not quite sure what you mean, but do you mean, for example, that it would be inaccurate to say that I can be identified as Judge Bryson? No, Judge Bryson is simply a name that is attributed to me What I am is actually a collection of cells, mostly living in some dead cities, right? Hopefully mostly living, Your Honor, yeah. Well, my hair, my fingernails, and I think part of my brain at this point, but let's, I mean, it seems to me it is, the normal way of speech would be to say that I am Judge Bryson, even though that is my name. And by analogy, a particular piece of equipment is identified by its particular number. Isn't that the way that terminology is used in the industry? I mean, I think of my telephone as being identified with and by the telephone number that it's assigned. And again, could the language have been clearer? Well, certainly, in retrospect, it could have. But the language is not identified, it's identity. And I would suggest that identity is something different. And I'd look for further support, if you look at Claim 1, say, of the 670 patents, and you can find that at JA 2340. And you'll see that this call station language is used in another section of the claim. So there's a means for connecting that starts at line 61. And that reads, means for connecting the call to an identified call station at a second network address. The call station having either a busy status or an idle status. I would suggest that that supports our position that we're talking about equipment and not the number, because a number isn't going to be busy. It doesn't have a busy or an idle status. The phone itself does. Mr. Ward, if you go back to the two passages you were referring to on page 19 of the retrieve, if you look at the paragraph, the passages in there entirely, what it starts out by talking about the telephone number dialed is transmitted to a central office. There's a switch. The switch is responsible for determining the destination of the call based upon the transmitted signals. The transmitted signals being the signals resulting from the dialing of a telephone number. It's hard for me to read this any other way than the way interpreted by the district court. The telephone number has a function, does it not? Yes, it does, and it serves as an address. It directs a call to the proper address, but the address... It's identifying the address. It's identifying the calling station. Sure, but it's like putting an address on an envelope, Your Honor. That'll get a mail to your house, but it's not your house. But from a technological standpoint, I actually took a class in telephony, but this is so many years ago that maybe I don't understand this at all, and I'm willing to acknowledge that. But as a matter of technology, I don't even understand how, from an electronic standpoint, your construction would work. The point of this claim is that you can't choose the announcement based on the identity of the call station. That's one of the things you can't choose the announcement based on. As a matter of telephony, how is this system going to figure out what the model number is on the telephone on the other end? Because I just don't understand as a matter of telephony how telephone systems are even capable of doing that. Certainly they know what the number is of the telephone on the other end, but I really don't think as a model of telephony there's any system that can identify whether the receiving telephone happens to be an AT&T telephone, a Sprint telephone, i.e. what the physical parameters are of that property that is receiving the call. I don't think, from a technological standpoint, that's even possible. But that's, in fact, if I understand it, the construction you're advocating for. It's certainly not disclosed in this patent how it would be done. And I mean, I'm not a skill in the art. I have only a modest knowledge of telephony. But am I wrong? I mean, what am I missing here? What you're missing, Your Honor, is the point of this patent. This is a system that piggybacks onto the telephone network. So the telephone network operates as it operates. And this language was specifically inserted to distinguish the prior art that were answering machines. I think you're misunderstanding my question. You're saying that the identity of the call station is the physical property, right? Well, so the identity would be different if it was a Sprint phone versus an AT&T phone, okay? But I don't see a technological means for this system, or actually any other system I know of, to distinguish between those two. They don't put off different signals. You know, a Sprint telephone and an AT&T telephone both sitting in my house, I mean, unless, I guess, they're RF phones, maybe they operate on different frequencies. But apart from something like that, I just don't see how... They operate on different networks, that's correct. But you still have a phone, and it's the physical phone, and just, I agree that this is pretty complicated how phone systems work. But think of it this way. The phone is different from the phone number. If you destroy it, you're... Yes, but all phones are the same. There is no identity as between an AT&T phone, a Sprint phone, you know, or any of the other name brands of Verizon phones. There is no difference in the signal that they are putting out, because they're not, right? They're receiving a call. And the system, as far as I can tell, can't tell whether the phone receiving a call happens to be of a Verizon name brand versus a Sprint name brand. And that's what I seem to think your construction would suggest, that somehow it has to figure out the identity of the physical property. And if it's not the telephone number, what is it? Is it the serial number on the receiving product? Well, that is one way that cell phones work. They have a different serial number and different identification numbers. But this is not... I don't understand this patent to be directed to cell phones. I understand it to be not limited by any means. Right. And that's when it talks about network addresses and such, that's contemplating cell phones. But think of it this way, Your Honor. If your cell phone is destroyed and a call is placed to it, it's still going to answer, because these systems are at the central office. They're not attached to your physical phone. And that was the difference between this invention and what came before, because what came before were answering machines and voice messaging systems that were owned by and operated by the telephone owner, and they were generally attached to the telephone. The point of that language was to differentiate those systems, because this system isn't owned by the telephone owner. It's owned and operated by the telephone company at the central office, and they profit from it. How do you deal with the prosecution history argument that your opposing counsel make based on the distinction at JA 1470 of the fields patent? You characterized fields as delivering a message on the basis of the number entered by the user of the telephone, the called number, and you're saying, we don't do that. How is that consistent with the argument you're making now? Because it sounds to me like what you're saying is exactly contrary to the argument that what we don't do has nothing to do with the telephone number, the called number. Right. No, fields is a typical voice messaging system. You call a number, and fields tells you, do you want to leave a message? I understand, but your distinction of fields was based on the notion that, as you said, it discloses delivering a message on the basis, and this is boldface, on the basis of the number entered by the user of the telephone, which is contrary to claim one, all right? And it sounds to me, just reading this by its plain terms, that what you're saying is, we don't base the message on the called number, which is different from, you say, that's something which is quite different from the called status. Yes, because in the Greenville system, the called number can be a criteria that's considered in choosing an announcement, but it's not... Are you saying that we don't base it exclusively on the called number, but we're allowed to base it in part on the called number? You certainly are allowed to base it in part on the called number, but in general, the called number is one of the criteria that's used to decide which message may be played. The point, though, is that in fields, you're just leaving a message for somebody, and that message is attached. It's integral with the phone itself. That is a distinction that you might have proffered to the examiner, but it isn't the distinction that you did proffer. Well, I wasn't... Okay, but whoever was prosecuting this re-examination characterized the distinction much more broadly than that. Can I ask a question? Your physical property argument, are you saying that's the only identity of the called station? Are you excluding the possibility that the phone number can be an identity of the called station? No, the phone number is not an identity of the called station. It can identify... The language says that the phone number identifies the called station, and it's hard to argue against that, but it's not the identity, and that's how... But why is the model number any more an identity of the called station than the telephone number that's attached to it? In either case, it's just a number that somebody has arbitrarily attached to the equipment, right? No, no, no. We're talking about the equipment itself. Well, I understand, but the equipment has, let's say, a serial number on it. Sure. Okay, somebody has put that serial number into the phone. Okay, so it's associated with that number. By the same token, at least for a period of time, sometimes for the entire life of the equipment, typically, it will be assigned a telephone number, which also identifies as the called station. Why are you treating the two so differently? Only because that's how the language was written to distinguish from the prior art, which was voice messaging systems and answering machines that were integral to the piece. Am I correct? Both of these patents have expired? Yes, yes. Well, Mr. Ward, we've covered you with questions, but we'll restore some rebuttal time for you. Thank you. We should probably hear from a opposing counsel now. Tell me how to say your last name. Cabale. Cabale. I would not have gotten that even close, so good thing you have. Neither has anyone ever. Good morning. May it please the court. My name is Doug Cabale. I represent AT&T Mobility, and I have the privilege today to speak on behalf of all the appellees. I'd like to pick up briefly with the points your honors were making with respect to the identity of the called station. There are three reasons that confirm that the district court's meaning is the correct one. And by the way, we do have two issues on appeal here that are independent if the court agrees with the district court on either of the issues, it should affirm the judgment. But back to the first issue. Let me ask you a question about that. I mean, that does appear to be the case in this particular case. Are there collateral consequences that would, it seems to me there may be other litigation ongoing, I don't know, but are there reasons to think that if this court should conclude that the judgment could be affirmed on one ground that we should nonetheless visit the other ground? It is your honors discretion. You are correct that the patents are expired now. Right. And so this will resolve the case against all of the existing systems that have been sued, and they have sued pretty much the whole wireless industry. So if I understand what you're saying, if we should conclude that the judgment can be affirmed on one of the two grounds, that there is no particular reason to go ahead and address the other ground, there's no case waiting out there in which only one of the grounds would be present. That is correct. Okay. The three reasons for affirming the district court's construction with respect to the identity of the called station are number one, as your honor has pointed to, the controlling statement in the specification that the called station is identified by the telephone number that's dialed. Number two, the prosecution history of the original patent where this claim language came into being, and it came into being to distinguish prior art that was determining announcements based on the number that was dialed. Can I ask my same stupid technical question to you? This patent covers both conventional systems as well as cell phones. It's not limited to cell phone technology, right? Correct. The 670 patent is not. And in a conventional telephone, I just don't understand from a technological sense, and be honest and tell me if I've got it wrong, but from a technological sense, how you're supposed to figure out the identity, if it's not the phone number, of the physical telephone that sits on my kitchen shelf. Cell phones, I understand, could be different. Like my iPhone, for example, knows that it's talking to another iPhone as opposed to some other kind of phone. But the old-fashioned conventional system, I don't see how it could figure out if that's an AT&T phone or a Sprint phone or anything else. I think you're exactly right, Your Honor. We're talking about a called station. So at the time a station or a telephone is being called, the question is, how does the system identify which one you're talking about? And the way it identifies it is through the number that was dialed. That's the way the telephone networks know which phone you're talking about. Is there any evidence in this record, or even that you know of, that would allow this marketing system to identify the type, the physical type of telephone on the receiving end, such that it could then associate an identity with it, like it's Sprint model number 274 or whatever? There's certainly nothing in the record. I'm not aware of any evidence that would support that. The third reason for affirming is the re-examination and the discussion of the fields reference, where, again, they confirmed that, consisting with the district court's construction, the identity of the called station is the number that's dialed. This is the first we've heard at all today on appeal about the controlling sentence and the definition from the plaintiff. That was discussed at length at the district court. Of course, the district court found that it came very close to providing an explicit definition of the term, the term identity of the called station. The patent directly addresses and says it's identified by the number that's dialed by the calling party. That's the district court's construction. That wasn't addressed in the opening brief by appellant. It wasn't addressed in their reply brief. They'd ignored that sentence. Well, but to be fair to Mr. Ward, I think that his addressing that sentence is consistent with, he addresses it in a manner that's consistent with the theory of the case that he's spelled out throughout that portion of his brief. Fair enough. I.e., number is different from station. Fair enough. I want to take just a minute to talk about the prosecution history. In the reply brief, it was suggested for the first time that this was not a response to a prior art rejection, but instead a response to a 112 rejection. That's incorrect. As we heard today from counsel for appellant, that was in response to a prior art rejection. When Greenville filed these patent claims, the idea of playing an announcement instead of a busy signal or a ringback signal wasn't new. The patent office cited prior art dating back to 1932 showing that concept. It relied for its rejection on the Baral reference, and the Baral reference actually had nothing to do with an answering machine that was physically tied to a telephone. It was a voice messaging system. It was a telephone network voice messaging system. And the way the Baral system worked was it would play an announcement that was dependent on the number that had been dialed. It actually included in the message the number that had been dialed. It let the calling party affirm that, in fact, it had dialed the number it thought it dialed. So this Baral system, which played a message that was dependent on the identity of the called station, was argued to be different than the amended claims. The claims were amended, of course, to add this language that the announcement in the patent has to be determined independently of the identity of the called station, different from Baral, which determined its announcement based on the number that had been dialed. When they added that claim language, the identity of the called station, independent of the identity of the called station, in that same response to office action, they amended their specification. And they amended the specification to add the sentence that we've been talking about here today. The called station is identified by the telephone number entered by the calling party. That amendment to the specification is at Joint Appendix 616, and you can see the examiner's handwriting in context of where that fits into the claim at Joint Appendix 470. What had happened was the examiner had pointed out to Greenville that the sentence used to say, the called party is identified by the telephone number that's entered. And the examiner properly recognized that that number doesn't identify a party, it identifies the called telephone. So he said, you've got a misdescriptive specification here. They said, you're right, we'll amend it. And they changed it to state that the called station is identified by the telephone number. At the very same time, they added this claim language that the claim had to determine an announcement independent of the identity of the called station. With respect to the fields reference and reexamination, the reply brief suggests that that claim language, suggests that the argument that was made was not made in response to the claim language that we're dealing with here today. Can I have a view on the sequence thing? I mean, if you have a few more... Before we leave that, could I ask just one question? Of course. You addressed, albeit briefly in your brief, a point that your opposing counsel make a great deal of in this, which is the language from the 670, which differs, admittedly, from the language from the 740, about called parties. Why don't you address why it is that, at least with respect to the 670, the specification specifically referring to the use of the called station line shouldn't give us some guidance as to how to construe that patent. Yes, Your Honor. A couple reasons for that. Number one, that refers to a disclosed but unclaimed embodiment. We don't know what the called station line is. There's no definition of that term in the patent. But assuming for the purposes of today that it refers to the dialed number, what we'd be left with is... It's kind of hard for you to say called station clearly means number and called station line means anything other than the number, wouldn't it? We don't know. I mean, frankly, that seems... If it's not self-evident, then tell me. Okay. For purposes today, I'll go with you on that. Let's assume that it says you can consider among a list of many other factors the dialed number. They added that, of course, in the 670 patent specification. Now, in context where that appears is we've got a laundry list of things that you can consider to determine an announcement. What we've also got is a claim that unambiguously says you cannot consider the identity of the called station. We've got in that same specification unambiguous statement. The called station is identified by the number that's dialed. Time says you can't use it. Specification tells us what it is that you can't use. You can't use that dialed number. The prosecution history. Prosecution history, they added that language to overcome Verall, which used the dialed number to determine the announcement. Re-examination confirmed it again. Re-examination of both the 740 and the 670 patent confirmed it again that while fields uses the dialed number to determine its announcement, that's, as your Honor pointed out, they said that's contrary to Claim 1. Contrary to the language we're talking about here that says you have to determine the announcement independently of the identity of the called station. So the bottom line answer is that you've got an overwhelming amount of intrinsic evidence unambiguously confirming that the identity of the called station is the number that's dialed. You've got some added subject matter that suggests that under its best reading suggests that the dialed number could in some embodiment be considered. That is a disclosed but unclaimed embodiment. And this Court's precedent is replete with examples of subject matter that's included in the spec but is not claimed. And the tip systems v. Phillips case is one example. I understand your point. Yes, sir. Judge Moore, I believe you had questions on the order. I'm a little bit struggling. Why don't you tell me why you think that these elements have to be performed in the exact order as written? Because our general rule is they don't, right? They don't have to be performed in the sequence in which they're written. The general rule is that you would not recognize a sequence limitation unless the claims, the specification, and the prosecution history tell you otherwise. And in this case, I think they do. The context of the claim is that you're replacing one signal in the traditional telephone network with an announcement. The signal that's being replaced is called a call progress signal. It's either a busy signal or it's a ringback signal. It's the signal you would hear after you dial and you're waiting for someone to answer. It tells you whether the line is busy or not. But the thing is that that's not actually what the claim covers. The claim doesn't cover replacing the busy signal you would hear with the announcement. The claim covers determining if there's a busy signal and offering an announcement. There's no reason that the minute you dial, why wouldn't the system start playing its announcement? This is a marketing effort. Why wouldn't it start playing the minute you dial and then as it's processing it and figuring out if it's busy or not, you're hearing the announcement. I mean, it would only be to their advantage to start playing as early as possible because that's what this is. I mean, the benefit derives from making you listen to the commercial. Okay, three points here. In the preamble of the claim, it discusses that this is a system and it's a method for modifying an existing telephone system to replace a call progress signal with an announcement. So this signal that's being replaced... Yes, but that is replacing the busy signal with an announcement. That doesn't mean the announcement couldn't have been playing before that. It's a comprising claim. Well, the reason we know that it couldn't have been playing before is first we start with the claim language. We know that the announcement is said to be played at a particular time during the time period when the call progress signal would have been provided. But that's not when it starts. That's only when it has to be played. It has to be played during that time period. That doesn't exclude it being played at other times. Again, it's a comprising claim. Well, what excludes it, Your Honor, is that very language, playing it during that particular time period, was used as a basis for distinguishing prior art in the reexamination. When they faced the Yasuda reference, the Yasuda reference was a reference that taught that you could play an announcement before you determine busy. You could also play after determining busy. And they used this exact claim language and they boldfaced this language played during a time period when a call progress signal would have been provided. And so that's different. I don't read the reference anywhere near as clearly as you seem to. I think it's ambiguous. So I don't know that that prosecution history provides a clear basis for deviating from the general rule that a sequence isn't necessary. So your arguments are that the preamble, which you can tell I'm not buying, the claim limitations, yep, not buying those either. And so now you've gone to the prosecution history. Is that it? Well, we do have the specification. That's what I'm wondering. I'm not sure if there's anything else. Sure. The specification, every time any sequence is discussed, the same sequence is discussed, it's always that you first determine busy and then you initiate playing the announcements. And that's at column three lines 59 to 64 in the 740 patent, for example. That's what's described in all the text. That's the only thing that's described in the figures. Every time you look at the figures and there's a decision block, is it busy or not, you'll see that the playing of the announcement happens after that. There's no disclosure suggesting any other order than this. But the claim doesn't specify when the message starts. I think the claim does, in light of the specification in the prosecution history, when the claim says, playing an announcement during a time period when a call progress signal would have been provided, that time period... Well, it's just during that time period. It doesn't specify when it starts. You can't read that from the specification into the claim. Well, what we're doing is interpreting that claim language in light of the prosecution history and the specification. One more point on the order of claim steps. There is a third basis to affirm the district court's judgment, and that's on the order of the claim steps, and it's in light of what we've learned in the briefing so far. So the district court found that determining happened before you played an announcement during a time period when a call progress signal would have been provided. And that obviously was brought on appeal. A stipulation or a concession was made, though, in the blue brief at page 22, that Greenville now agrees that the playing of an announcement must occur at least in part after the initial determination of the busy idol status. Well, but that doesn't mean it couldn't have also been playing before. Fair enough. The point I'm making is that it's stipulated  the accused systems begin playing an announcement, and then upon determining that the line is busy, they stop. They do not play any announcement after determining busy. They don't play any announcement during a time period when that busy signal would have been provided. We pointed this out in our brief at pages 39 and 40. We pointed to the claim language that shows that these claims require that whether the line is initially busy or initially idle, in both situations you must play an announcement. And the claim says you must play it during this time period when you would have played a call progress signal. That's after determining busy. Greenville agrees with us. On page 11 and page 12 of their reply brief, page 11 Greenville says, the claims themselves support the conclusion that the announcement is played irrespective of the busy idol status. They cite the same claim language that we do for that proposition. They say on page 12 that the announcement plays regardless of the status. So everyone agrees the announcement has to play, whether the line was initially busy or initially idle. It must play. Greenville's conceded on page 22 of their opening brief, it must play at least in part after busy is determined. We have a clear stipulation, though, that the accused services don't do that. They stop playing any announcement once it's determined to be busy, and they don't play anything thereafter. And that's an additional reason to affirm the judgment. Okay, counsel, I think we should let Mr. Ward have his rebuttal time. Thank you, Your Honor. You only have about a minute and a half, but we went over with your opposing counsel, so if you need a little extra time. I'll be as quick as possible, Your Honor. Taking the last issue first, the order, certainly we don't think that there should be any order requirements, certainly not in apparatus claims. There's no justification for that in facts or the law. We don't think it's justified. You mean the system claim you're referring to, which is a means plus function claim. Means plus function, right. And the structure, so that points us at the structure, and the structure involves use of the call processing system. Correct. I'm sorry, call progress. Signal, right. Okay. As a justification for no order requirement in the one method claim, I would direct your attention to Figure 7 of the 670 patent. It's at 2333. This is described in the specification as an alternative embodiment. It's where a message is preselected based on a criteria. Here the criteria is identified at Block 38 as the time of day. Given a particular time of day that a call comes in, a specific message can be programmed. And as you follow through Figure 7, you will see that in this particular embodiment that the telephone marketing system plays the advertisements at Block 40 before any check of status has been done. With respect to Yasuda, Yasuda just inserts messages or ads. It does nothing to replace the calls to progress signals that is the focus of this invention. And finally, with respect to Baral, I would point your attention to JA00626, where it's discussed in the prosecution history. The Baral patent was also discussed at the interview. It was pointed out to the examiner that the Baral patent discusses a voice messaging system in which an announcement pertaining to the leaving of a voice message is provided to the calling party during a ringback or a busy signal. The calling party is then invited to enter a particular code on a touchtone phone whereupon the caller is switched to the voicemail system, thereby effectively preventing completion of the call to the call station. It was pointed out that in the Baral et al. system, the announcement which the calling party hears is specifically related to the identity of the call station, and in particular, instructions with respect to how to leave a voicemail message for the particular call station. I don't know if that helps to clarify. It certainly helps provide a mindset for what was attempted to be accomplished with that claim language. Just a quick question on Yasuda. At 1490 of the Joint Appendix, you distinguish Yasuda on the ground that it provides for advertising that can be delivered before the dial tone, between the dial tone and dialing, or after dialing, but then characterizing your own invention as being means for playing an announcement during a time period when the call process signal would have been provided to the calling party. Aren't you in effect saying during, and only during, the time that the call process signal is in operation? I.e., after the connection or busy signal has been established, the idle or busy signal has been determined? No, because you don't have to determine whether it's busy or idle in order to replace either of them, which is the purpose of this system. You don't have to make that determination. You do not. But that's what the call progress signal is, as I understand it. It's a signal that tells you either busy or idle. And if what you're doing, and the specification throughout seems to indicate that what you're doing is replacing the call progress signal, then that can only occur after you have a determination of busy or idle, correct? No, because it doesn't matter whether it's busy or idle. The specifications make it plain that whether it's busy or idle, the message is going to be played. It doesn't matter. Where does it say that in the specification? Unless I'm misunderstanding what you're saying, my understanding was you get the call progress signal. It tells you either busy or idle, and then, according to the description of the invention in the specification, the message is sent. It replaces one or the other of those. No. Again. Can you do better for me? A more helpful answer than no. That's fair enough, Your Honor. Okay, so just for an example, on column 8 of the 670, it is 2338. Line 5, if the second telephone 20 is idle on hook, the system 10 initiates a sequence of prerecorded announcements as illustrated in figure 6 and 7. So that's the idle option between idle and busy. Correct. One of the two options for the call progress signal, right? Yes. So that is not outside of the call progress signal trigger. Do you have anything that is outside of the call progress signal trigger? Do you understand my question? I may not be being as clear as I should be. I think, Your Honor, we're always within the time frame for the call signal status, but whether that status is actually checked or not is irrelevant. Okay. Okay, the case is submitted. Thanks for coming.